```
 1 | Steven R. Houbeck, Bar No. 168018
   | Attorney at Law
 2 | P.O. Box 150
   | Cardiff, CA 92007
 3 | (619) 463-4357
 4 | Attorney for Debtor(s)
```

FILED
01 FEB 12 PM 3:37
CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | BK. CASE NO. 99-36848-PB13 |
| SIEGLINDE M. ZIMMER | ADV. NO. 00-90254-PB |
| Debtor(s). | OPPOSITION TO PSB LENDING CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| SIEGLINDE M. ZIMMER Plaintiff, | |
| vs. | DATE: MARCH 5, 2001 |
| | TIME: 10:00 AM |
| | PLACE: U.S. COURTHOUSE |
| PSB LENDING CORP. ET. AL. Defendants | JACOB WEINBERGER 325 WEST "F" ST. |
| DAVID L. SKELTON Chapter 13 Trustee. | DEPT: FOUR |
| | JUDGE: BOWIE |

DEBTOR, SIEGLINDE M. ZIMMER ("PLAINTIFF"), through her attorney, Steven R. Houbeck, hereby submits this Memorandum of Points and Authorities in Support of PLAINTIFF'S Opposition to PSB Lending Corporation's ("PSB") Motion to Dismiss Debtor's Second Amended Complaint Without Leave to Amend and respectfully represents the following herein:

**STANDARD OF REVIEW**

Rule of Bankr. P. 7012(b) incorporates Rule 12(b)-(h) of the Federal Rules of Civil Procedure. The District Court may not grant a Rule 12(b)(6) motion for failure to state a claim for

relief unless it appears "beyond doubt" that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. Conley vs. Gibson, 255 U.S. 41, 45-46 (1957.) All allegations of fact in the complaint are assumed to be true and are considered in a light most favorable to the plaintiffs, and all reasonable inferences must be drawn in favor of the plaintiffs. McCalden vs. California Library Ass'n., 955 F.2d 1214 (9th Cir. 1992). Therefore, no complaint shall be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim which would entitle the plaintiff to relief. Conley vs. Gibson at 45-46, supra.

The Plaintiff has alleged definite statements of fact, ascertainable actions, and specific allowable prayers for relief.

In following the Conley vs. Gibson analysis, the Federal Rules of Civil Procedure, Rule 12, does not require the plaintiff to set out, in full detail, every single relevant fact which supports a claim. All that is required is a short and concise statement which gives the defendants fair notice of the claim and the grounds upon which it rests. Plaintiffs have clearly sustained this light burden. The Court's initial inquiry is limited to the four corners of the complaint and all attachments, LaBounty vs. Adler, 933 F.2d 121, 123 (2d Cir. 1991), and there is no need for the court to make factual determinations. Scheur vs. Rhodes, 416 U.S. 232 (1974).

///
//

## ARGUMENT

### I.
### PLAINTIFF STATES A CAUSE OF ACTION UNDER 15 U.S.C. § 1641 OF THE TRUTH IN LENDING ACT AGAINST DEFENDANT PSB LENDING CORPORATION NOTWITHSTANDING THE FACT THAT THERE IS NO PRIVITY OF CONTRACT BETWEEN PLAINTIFF AND DEFENDANT

PSB states that its relationship with the Plaintiff as corporate assignee of the note and deed of trust between Defendant and Summit Mortgage Corporation ("Summit Mortgage") removes it from the purview of the Truth in Lending Act (TILA) pursuant to 15 U.S.C. § 1602(f) because the statute ostensibly confines the disclosure requirements of the act to the originator of the loan. However, 15 U.S.C. § 1641 of the Act is applicable to assignees of the original lender, which clearly includes PSB.

15 U.S.C. § 1641 provides that "any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against **any assignee** of such creditor only if the violation for which such action or proceeding is brought is **apparent on the face of the disclosure statement**, except where the assignment was involuntary." [emphasis added] A violation apparent on the face of the disclosure statement includes but is not limited to "inaccurate" or "incomplete" disclosures required by the Act. Id.

It does not appear in this instance nor has it ever been alleged that PSB was an "involuntary assignee" of the note and trust deed executed between Plaintiff and Summit Mortgage Corporation. PSB, like so many other financing companies in the

3

secondary mortgage market, likely has an exclusive contract with Summit Mortgage to purchase its loans and service them for the duration of the loan. PSB was in no sense an involuntary receiver of this or any other loan originated by Summit Mortgage.

Recently, new evidence has come to light indicating that PSB and Summit Mortgage may be liable to Defendant for fraud in the inducement as well as for violations of TILA. Pursuant to the Real Estate Procedures Act of 1974, (RESPA), which is incorporated by reference into TILA, the lender is required to give the borrower a good faith estimate of settlement charges before the borrower executes the deed of trust. Nevertheless, it is evident that identical signatures of Plaintiff and her husband appear on two different "Good Faith Estimate" forms. Attached hereto as Exhibit "A" is a true and correct copy of an original "Good Faith Estimate" which purports to be signed by Ralph W. Zimmer and Sieglinde M. Zimmer on October 8, 1997, the same date that Plaintiff and her husband executed the promissory note and deed of trust to Defendant Summit Mortgage. The typed-in date on the top of the estimate is "9-26-97". Also attached hereto is Exhibit "B", which contains the identical signatures of Plaintiff and her husband in an identical "Good Faith Estimate."

It appears that Plaintiff and her husband signed Exhibit "A" on October 8, 1997 since the document was prepared on September 26, 1997 (the handwriting of the signatures and the dates is obviously of the same authorship), but that Defendant Summit Mortgage realized that the document had to be dated before the promissory note and deed of trust were executed in order to

4

comply with TILA. Apparently, Defendant Summit Mortgage superimposed the signatures of Plaintiff and her husband onto a another copy of the "Good Faith Estimate," which they backdated to "9-17-97" in type, the date of the fraudulently executed "Good Faith Estimate." To make the typed date look consistent with the signature date, a representative of Defendant Summit Mortgage backdated the fraudulently executed "Good Faith Estimate" to September 17, 1997 in his own handwriting. A cursory examination of the date next to the signatures of Plaintiff and her husband on Exhibit "B" clearly reveals that the signatures and the handwritten dates are not of the same authorship. A cursory examination of the signatures of Plaintiff and her husband between Exhibits "A" and "B" clearly reveals that they are identical and that there could only be one set of original signatures. If an original set of signatures only exists with respect to Exhibit "A", then there would no original of Exhibit "B" since the signatures of Plaintiff and her husband on Exhibit "B" would only exist as facsimile copies. Plaintiff requests further leave to amend in order to allege these additional circumstances of fraud, which if proved, would subject PSB to assignee liability under the TILA since there would be evidence of fraud on the face of a disclosure statement.

Furthermore, Plaintiff does make out a *prima facie* case for relief against PSB as well as Summit Mortgage pursuant to her fourth claim for relief under the TILA on the grounds that Summit Mortgage made inaccurate and/or incomplete disclosures pursuant to Regulation Z of the Act and that, by virtue of 15 U.S.C. §

5

1641(a), PSB succeeded to all the rights and liabilities of the assignor when it voluntarily accepted the assignment of this loan from Summit Mortgage Corporation. Paragraph 12 of the Deed of Trust between Summit Mortgage Corporation and Plaintiffs states that "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17." Moreover, 15 U.S.C. § 1641(b) provides that "written acknowledgement of receipt by a person to whom a statement is required to be given" pursuant to the TILA is all that is required to trigger assignee liability. Plaintiff in this instance has sufficiently alleged that she received loan documents and acknowledged receipt of them with her signature. In addition, 15 U.S.C. § 1641(c) provides that "[A]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." Therefore, the remedy of rescission is still available to Plaintiff to redress Defendant's alleged TILA violations.

## II.
## PLAINTIFF'S FOURTH AND SIXTH CLAIMS FOR RELIEF ALLEGING FRAUD AND INTENTIONAL MISREPRESENTATIONS IS PLEAD WITH SUFFICIENT PARTICULARITY TO SATISFY FRBP 7009

F.R.Bankr.P. 7009 incorporates by reference F.R.Civ.P. 9, which provides that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." F.R.Civ.P. 9.

Plaintiff's fourth and sixth counts allege that PSB, through its assignor Summit Mortgage Corporation, intentionally misrepresented to Plaintiff that it had complied with Regulation Z of the TILA, that Plaintiff qualified for a second home loan, and that Plaintiff justifiably relied on these misrepresentations, which induced her to accept the loan offer and execute a second trust deed against her home. Defendants PSB and Summit Mortgage knew that Plaintiff and her husband were elderly, that Plaintiff's husband would not likely survive the 20 year term of the loan, and that Plaintiff would find herself unable to repay the second trust deed and note upon her husband's death. Summit Mortgage and PSB also mislead Plaintiff by failing to disclose the actual costs of the loan in a "Good Faith Estimate" before she executed a deed of trust and promissory note and by not requiring Plaintiff to have life insurance on her husband to cover the loan repayment in the event of his death. Despite their actual or likely knowledge of these facts, Defendant PSB and Summit Mortgage represented to Plaintiff that she was qualified for this loan. Had Plaintiff been informed of the true facts, ie. she would be unable to repay this loan in the event of the death of her husband, whom Summit Mortgage and PSB knew or likely knew was in poor health at the time the loan offer was tendered, she would not have executed the loan documents. The facts upon which the allegations for fraud against PSB and Summit Mortgage rest are adequately set forth in the Plaintiff's verified complaint and do more than just put PSB on notice of the claim. As to the new evidence of fraud concerning the facsimile

7

transposition of Plaintiff's signature from an originally executed "Good Faith Estimate" to a backdated, unsigned version of the original, these facts will be specifically alleged in a Third Amended Complaint.

### III.
### PLAINTIFF DOES MAKE OUT A PRIMA FACIE CASE THAT DEFENDANT OWED HER A COMMON LAW DUTY OF ORDINARY CARE AS ASSIGNEE OF HER LOAN AND THAT PSB'S BREACH OF THIS DUTY TRIGGERED DEFENDANT'S LIABILITY FOR NEGLIGENT MISREPRESENTATION OF FACT

Although, in California, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. **Nymark vs. Heart Fed. Savings & Loan Assn.** (1991) 231 Cal.App. 3d 1089, 1096. However, there are exceptions to the general rule. The test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." **Biakanja vs. Irving** (1958) 49 Cal.2d 647.

///

8

Based upon the allegations set forth in the Plaintiff's verified complaint, there are plausible grounds for imputing a duty of care to Defendant as assignee of rights and liabilities under the note and deed of trust executed between Plaintiff and Summit Mortgage Corporation. First, PSB and Summit Mortgage intended to affect the Plaintiff by inducing her to consummate its loan transaction. Based upon its representations and disclosures to Plaintiff that she had the financial ability to tender all payments pursuant to the promissory note, Plaintiff executed the loan documents. Secondly, it should have been reasonably foreseeable to PSB and Summit Mortgage that Plaintiff could be harmed by relying on its misrepresentations that she could afford this loan. Third, Plaintiff has suffered a cognizable injury as a natural and probable consequence of PSB's and Summit Mortgage's misrepresentations because she has since gone into default under the terms of the loan and has had to file a Chapter 13 bankruptcy in order to protect her only residence from foreclosure. That Plaintiff has suffered harm as a proximate result of PSB's and Summit Mortgage's negligent misrepresentations concerning her qualifications for this loan is irrefutable. Fourth, the closeness of the connection between the Defendant's conduct and the injury suffered, though somewhat tenuous due to the lack of privity between the Plaintiff and Defendant, is buttressed by the agreement between Plaintiff and Summit Mortgage under the deed of trust and the corporate assignment deed of trust executed between Summit Mortgage Corporation and the Defendant. By way of assignment, Defendant

9

1 | succeeded to all the rights and liabilities that formerly
2 | belonged to Summit Mortgage. Fifth, the moral blame attached to
3 | Summit Mortgage's conduct is particularly egregious inasmuch as
4 | Plaintiff did not solicit Defendant for this loan and the fact
5 | that Plaintiff and her husband were elderly and that Plaintiff's
6 | husband was in very poor health. Plaintiff was clearly the
7 | victim of Summit Mortgage's predatory lending practices targeting
8 | vulnerable and unsophisticated elderly homeowners. In
9 | particular, had Plaintiff been actually aware of the settlement
10 | charges in advance of signing the deed of trust and promissory
11 | note, (including prepaid finance charges of $3,585.00), she would
12 | not have been induced into signing the loan documents. Sixth,
13 | the policy of preventing future harm is fairly compelling in this
14 | case. There is a strong public interest in deterring financial
15 | abuses against the elderly, who are particularly susceptible to
16 | deceptive trade practices.
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 | ///
27 | //
28 |

**WHEREFORE**, PLAINTIFF prays for an Order granting the following relief:

1. That PSB's Motion to Dismiss Second Amended Complaint Without Leave to Amend Be **DENIED**; or, in the alternative,

2. That Plaintiff be granted further leave to amend her complaint; and

3. For any other relief that this Court deems just and reasonable.

DATED: 2/12/01

Respectfully submitted,

STEVEN R. HOUBECK
Attorney for PLAINTIFF
SIEGLINDE M. ZIMMER

11

| | |
|---|---|
| Creditor: SUMMIT MURIL & CORP.<br>2152 DUPONT DR. #212<br>IRVINE, CA 92715 | Re: RALPH I. ZIMMER<br>SIEGLINDE M. ZIMMER<br>16605 ORILLA DRIVE<br>SAN DIEGO, CA 92128 |
| Date: 9-26-97 | Loan Number: 97608 |

☐ **FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT - PART II**
   **"ITEMIZATION OF AMOUNT FINANCED"**
☒ **GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES**

Listed below is the Good Faith Estimate of Settlement Charges made pursuant to the requirements of the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). These figures are only estimates and the actual charges due at settlement may be different. This is not a commitment to make a loan.
The numbers listed in the left hand column of the estimated settlement charges correspond to the line numbers on the HUD-1 form which will be used in conjunction with the settlement of your loan. For a further explanation of these charges, consult the enclosed Special Information Booklet.

| Ref. HUD-1 Statement | ITEMIZATION OF AMOUNT FINANCED | AMTS. YOU PAID SEPARATELY (A) | AMTS. INCLUDED IN PRINCIPAL (B) |
|---|---|---|---|
| | I. AMOUNT PAID TO AND RETAINED BY YOU: | $ | $ 1,061.00 |
| | II. AMOUNT PAID ON YOUR ACCOUNT: | | |
| 1105 | Document Preparation Fee | | |
| | III. AMOUNTS PAID TO OTHERS ON YOUR BEHALF: | | |
| 803 | Appraisal Fees to Appraiser | | 8.00 |
| 804 | Credit Reporting Fees to Credit Reporting Agency | | 100.00 |
| 1103 | Title Search Fees To Title Company | | |
| 1108 | Title Ins. Premium to Title Ins. Company | | |
| 1101 | Settlement or Closing Fee | | |
| 1106 | Notary Fee | | |
| 1201 | Filing Fees to Public Officials/Recording Fees | | 45.00 |
| 1302 | Pest Inspection Fee | | |
| 1305 | Flood Zone Determination Fee | | 22.00 |
| 1206 | | | |
| 1207 | Signing Fee | | |
| | Loan Proceeds To: | | |
| 1501 | AT&T UNIVERSAL CARD | | 8,490.00 |
| 1502 | CHASE MANHATTAN | | 6,466.00 |
| 1503 | HOUSEHOLD BANK | | 4,891.00 |
| 1504 | HOUSEHOLD BANK | | 4,974.00 |
| 1505 | HOME SAVINGS | | 4,710.00 |
| 1506 | SEARS | | 4,648.00 |
| 1507 | | | |
| 1508 | | | |
| 1509 | | | |
| 1510 | | | |
| | IV. PREPAID FINANCE CHARGE FROM SECTION V, TOTAL OF COLUMN 2 | | 3,585.00 |
| | • PRINCIPAL LOAN AMOUNT (Total of Col. B, Sections I thru IV) | | $ 39,000.00 |
| | • PREPAID FINANCE CHARGE (From Section V, Total (2)) | | (−)$ 3,585.00 |
| | • AMOUNT FINANCED | | $ 35,415.00 |
| | V. ITEMIZATION OF PREPAID FINANCE CHARGE: | | |
| 801 | Loan Fee/Origination Fee | $ | $ 3,510.00 |
| 802 | Loan Discount | | |
| 808 | Tax Service Fee | | |
| 809 | Loan Processing Fee | | |
| 901 | Prepaid Interest ( days) @  % per annum | | |
| 902 | mos. FHA Mtge Ins. Premium | | |
| 805 | Lender Inspection Fee | | 75.00 |
| 1105 | Document Preparation Fee | | |
| 820 | Underwriting Fee | | |
| 812 | Wire Fee | | |
| 813 | | | |
| | SECTION V COLUMN TOTALS | $ | (1) $ 3,585.00 (2) |
| | TOTAL PREPAID FINANCE CHARGES (Columns 1 + 2) | $ | 3,585.00 (3) |

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

_Ralph W. Zimmer_    10-8-97           _Sieglinde M. Zimmer_    10-8-9
(Applicant) RALPH W. ZIMMER    Date    (Applicant) SIEGLINDE M. ZIMMER    Date

_____    _____    _____    _____
(Applicant)    Date    (Applicant)    Date

EXHIBIT "A"

FROM : LAW OFFICES OF NATHAN SHILBERG    FAX NO. : 6195885650    Feb. 12 2001 02:24PM P8

JAN-03-01 12:25PM  FROM-PSB LENDING    2144860203    T-298  P.02/09  F-478

| Creditor: | SUMMIT MORTGAGE CORP.<br>2152 DUPONT DR. #212<br>IRVINE, CA 92715 | Re: | RALPH W. ZIMMER<br>SIEGLINDE M. ZIMMER<br>16605 ORILLA DRIVE<br>SAN DIEGO, CA 92128 |
|---|---|---|---|
| Date: | 9-17-97 | Loan Number: | 97608 |

☐ **FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT - PART II**
  **"ITEMIZATION OF AMOUNT FINANCED"**
☒ **GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES**

Listed below is the Good Faith Estimate of Settlement Charges made pursuant to the requirements of the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). These figures are only estimates and the actual charges due at settlement may be different. This is not a commitment to make a loan.
The numbers listed in the left hand column of the estimated settlement charges correspond to the line numbers on the HUD-1 form which will be used in conjunction with the settlement of your loan. For a further explanation of these charges, consult the enclosed Special Information Booklet.

| Ref. HUD-1 Statement | ITEMIZATION OF AMOUNT FINANCED | AMTS. YOU PAID SEPARATELY (A) | AMTS. INCLUDED IN PRINCIPAL (B) |
|---|---|---|---|
| | I. AMOUNT PAID TO AND RETAINED BY YOU: | $ | $ 1,061.00 |
| | | | |
| | II. AMOUNT PAID ON YOUR ACCOUNT: | | |
| 1105 | Document Preparation Fee | | |
| | | | |
| | III. AMOUNTS PAID TO OTHERS ON YOUR BEHALF: | | |
| 803 | Appraisal Fees to Appraiser | | 8.00 |
| 804 | Credit Reporting Fees to Credit Reporting Agency | | 100.00 |
| 1103 | Title Search Fees To Title Company | | |
| 1108 | Title Ins. Premium to Title Ins. Company | | |
| 1101 | Settlement or Closing Fee | | |
| 1106 | Notary Fee | | |
| 1201 | Filing Fees to Public Officials/Recording Fees | | 46.00 |
| 1302 | Pest Inspection Fee | | |
| 1305 | Flood Zone Determination Fee | | 22.00 |
| 1306 | | | |
| 1307 | Signing Fee | | |
| | Loan Proceeds To: | | |
| 1501 | AT&T UNIVERSAL CARD | | 8,490.00 |
| 1502 | CHASE MANHATTAN | | 6,466.00 |
| 1503 | HOUSEHOLD BANK | | 4,891.00 |
| 1504 | HOUSEHOLD BANK | | 4,974.00 |
| 1505 | HOME SAVINGS | | 4,710.00 |
| 1506 | SEARS | | 4,648.00 |
| 1507 | | | |
| 1508 | | | |
| 1509 | | | |
| 1510 | | | |
| | IV. PREPAID FINANCE CHARGE FROM SECTION V, TOTAL OF COLUMN 2 | | 3,585.00 |
| | • PRINCIPAL LOAN AMOUNT (Total of Col. B, Sections I thru IV) | | $ 39,000.00 |
| | • PREPAID FINANCE CHARGE (from Section V, Total (2)) | | (–) $ 3,585.00 |
| | • AMOUNT FINANCED | | $ 35,415.00 |
| | V. ITEMIZATION OF PREPAID FINANCE CHARGE: | | |
| 801 | Loan Fee/Origination Fee | $ | $ 3,510.00 |
| 802 | Loan Discount | | |
| 808 | Tax Service Fee | | |
| 809 | Loan Processing Fee | | |
| 901 | Prepaid Interest ___ days @ ___ % per annum | | |
| 902 | ___ mos. FHA Mtge Ins. Premium | | |
| 805 | Lender Inspection Fee | | 75.00 |
| 1105 | Document Preparation Fee | | |
| 810 | Underwriting Fee | | |
| 812 | Wire Fee | | |
| 813 | | | |
| | SECTION V COLUMN TOTALS | $ (1) $ | 3,585.00 (2) |
| | TOTAL PREPAID FINANCE CHARGES (Columns 1 + 2) | $ 3,585.00 | (3) |

The undersigned acknowledge receiving and reading a completed copy of this disclosure.
Neither you nor the creditor previously has become obligated to make or accept this loan, nor is any such obligation made by the delivery or signing of this disclosure.

_Ralph W. Zimmer_ 9-17-97    _Sieglinde M. Zimmer_ 9-17-97
(Applicant) RALPH W. ZIMMER   Date    (Applicant) SIEGLINDE M. ZIMMER   Date

_____  _____    _____  _____
(Applicant)   Date    (Applicant)   Date

EXHIBIT "B"

## PROOF OF SERVICE

I, the undersigned whose business address appears below, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age:

That I am not a party in this Court action:

That on the __12th__ day of __February__, 2001, I served a true copy of the within:

OPPOSITION TO PSB LENDING CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.

by messenger service to:

and by deposit in the United States Mail, first class postage prepaid, and addressed to the following:

```
Chapter 13 Trustee       Michael M. Wintringer, Esq.
David L. Skelton         Solomon, Grindle, Silverman & Spinella
600 B St., Ste. 2000     A Professional Corporation
San Diego, CA 92101      12555 High Bluff Dr., Ste. 260
                         San Diego, CA 92130
```

I certify under penalty of perjury that the foregoing is true and correct.

Executed on 2/12/01

Steven R. Houbeck, Esq.
P.O. Box 150
Cardiff, California 92007