```
1  Steven R. Houbeck, Bar No. 168018
   Attorney at Law
2  P.O. Box 150
   Cardiff, CA 92007
3  (619) 463-4357

4  Attorney for Debtor(s)
```

FILED
01 MAY 21 PM 4:42
U.S. CLERK
SO. BANKRUPTCY CT.
DIST. OF CALIF.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**SIEGLINDE M. ZIMMER**<br><br>Debtor(s).<br><hr>**SIEGLINDE M. ZIMMER**<br>  Plaintiff,<br><br>    vs.<br><br>**PSB LENDING CORP. ET. AL.**<br>  Defendants<br><br>**DAVID L. SKELTON**<br>  Chapter 13 Trustee. | BK. CASE NO. 99-36848-PB13<br><br>ADV. NO. 00-90254-PB<br><br>**OPPOSITION TO PSB LENDING CORPORATION'S MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:  JULY 2, 2001<br>TIME:  10:00 AM<br>PLACE: U.S. COURTHOUSE<br>       JACOB WEINBERGER<br>       325 WEST "F" ST.<br>DEPT:  FOUR<br>JUDGE: BOWIE |

      DEBTOR, SIEGLINDE M. ZIMMER ("PLAINTIFF"), through her attorney, Steven R. Houbeck, hereby submits this Memorandum of Points and Authorities in Support of PLAINTIFF'S Opposition to PSB Lending Corporation's ("PSB") Motion to Dismiss Debtor's Third Amended Complaint Without Leave to Amend and respectfully represents the following herein:

### STANDARD OF REVIEW

      Rule of Bankr. P. 7012(b) incorporates Rule 12(b)-(h) of the Federal Rules of Civil Procedure. The District Court may not grant a Rule 12(b)(6) motion for failure to state a claim for

relief unless it appears "beyond doubt" that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. **Conley vs. Gibson**, 255 U.S. 41, 45-46 (1957.) All allegations of fact in the complaint are assumed to be true and are considered in a light most favorable to the plaintiffs, and all reasonable inferences must be drawn in favor of the plaintiffs. **McCalden vs. California Library Ass'n.**, 955 F.2d 1214 (9th Cir. 1992). Therefore, no complaint shall be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim which would entitle the plaintiff to relief. **Conley vs. Gibson** at 45-46, supra.

The Plaintiff has alleged definite statements of fact, ascertainable actions, and specific allowable prayers for relief.

In following the **Conley vs. Gibson** analysis, the Federal Rules of Civil Procedure, Rule 12, does not require the plaintiff to set out, in full detail, every single relevant fact which supports a claim. All that is required is a short and concise statement which gives the defendants fair notice of the claim and the grounds upon which it rests. Plaintiffs have clearly sustained this light burden. The Court's initial inquiry is limited to the four corners of the complaint and all attachments, **LaBounty vs. Adler**, 933 F.2d 121, 123 (2d Cir. 1991), and there is no need for the court to make factual determinations. **Scheur vs. Rhodes**, 416 U.S. 232 (1974).

///
//

2

**ARGUMENT**

**I.**

**PLAINTIFF STATES A CAUSE OF ACTION UNDER 15 U.S.C. § 1641 OF THE TRUTH IN LENDING ACT AGAINST DEFENDANT PSB LENDING CORPORATION IN ITS FIRST AND THIRD CLAIMS FOR RELIEF ALLEGING FRAUD, DECEIT AND INTENTIONAL MISREPRESENTATION OF FACT NOTWITHSTANDING THE FACT THAT THERE IS NO PRIVITY OF CONTRACT BETWEEN PLAINTIFF AND DEFENDANT**

PSB states that its relationship with the Plaintiff as corporate assignee of the note and deed of trust between Defendant and Summit Mortgage Corporation ("Summit Mortgage") removes it from the purview of the Truth in Lending Act (TILA) pursuant to 15 U.S.C. § 1602(f) because the statute ostensibly confines the disclosure requirements of the act to the originator of the loan. However, 15 U.S.C. § 1641 of the Act is applicable to assignees of the original lender, which clearly includes PSB.

15 U.S.C. § 1641 provides that "any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against **any assignee** of such creditor only if the violation for which such action or proceeding is brought is **apparent on the face of the disclosure statement**, except where the assignment was involuntary." [emphasis added] A violation apparent on the face of the disclosure statement includes but is not limited to "inaccurate" or "incomplete" disclosures required by the Act. Id.

It does not appear in this instance nor has it ever been alleged that PSB was an "involuntary assignee" of the note and trust deed executed between Plaintiff and Summit Mortgage

3

Corporation. PSB, like so many other financing companies in the secondary mortgage market, likely has an exclusive contract with Summit Mortgage to purchase its loans and service them for the duration of the loan. PSB was in no sense an involuntary receiver of this or any other loan originated by Summit Mortgage.

Recently, new evidence has come to light indicating that PSB and Summit Mortgage may be liable to Plaintiff for predicate violations of the Real Estate Settlement Procedures Act of 1974 12 U.S.C. § 2601 et seq. (24 C.F.R. section 3500.1 et seq. (1999), as amended) and Regulation X. Pursuant to the Real Estate Procedures Act of 1974, (RESPA), the lender is required to give the borrower a good faith estimate of settlement charges both (1) at the time of application for a loan and (2) at closing on a HUD-1 form. Congress enacted RESPA "to insure that consumers throughout the [n]ation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices. . ." (section 2601). The purpose of RESPA was (1) to ensure that homebuyers could evaluate settlement costs in advance of closing and (2) to eliminate kickbacks or referral fees that unnecessarily increased settlement services. **Washington Mutual Bank v. Superior Court** (1999), 75 Cal.App.4th 773, 779 (private right of action for violations of RESPA available under state and common law and not pre-empted despite fact that federal law does not provide a specific federal remedy for violations of RESPA alleged).

In the instant case, it is evident that identical signatures of Plaintiff and her husband appear on two different "Good Faith Estimate" forms. Attached as Exhibit "A" to the verified complaint is a true and correct copy of an original "Good Faith Estimate" which purports to be signed by Ralph W. Zimmer and Sieglinde M. Zimmer on October 8, 1997, the same date that Plaintiff and her husband executed the promissory note and deed of trust to Defendant Summit Mortgage. The typed-in date on the top of the estimate is "9-26-97". Also attached to the verified complaint is Exhibit "B", which contains the identical signatures of Plaintiff and her husband in an identical "Good Faith Estimate."

It appears that Plaintiff and her husband signed Exhibit "A" on October 8, 1997 since the document was prepared on September 26, 1997 (the handwriting of the signatures and the dates is obviously of the same authorship), but that Defendant Summit Mortgage realized that the document had to be dated before the promissory note and deed of trust were executed in order to comply with RESPA. Apparently, Defendant Summit Mortgage superimposed the signatures of Plaintiff and her husband onto a another copy of the "Good Faith Estimate," which they backdated to "9-17-97" in type, the date of the fraudulently executed "Good Faith Estimate." To make the typed date look consistent with the signature date, a representative of Defendant Summit Mortgage backdated the fraudulently executed "Good Faith Estimate" to September 17, 1997 in his own handwriting. A cursory examination of the date next to the signatures of Plaintiff and her husband

on Exhibit "B" clearly reveals that the signatures and the handwritten dates are not of the same authorship. A cursory examination of the signatures of Plaintiff and her husband between Exhibits "A" and "B" clearly reveals that they are identical and that there could only be one set of original signatures. If an original set of signatures only exists with respect to Exhibit "A", then there would no original of Exhibit "B" since the signatures of Plaintiff and her husband on Exhibit "B" would only exist as facsimile copies. Should Plaintiff be successful in proving these allegations against Summit Mortgage, PSB would be subject to assignee liability under the TILA since there would be evidence of fraud on the face of a disclosure statement. The fraud is obvious insofar as the Plaintiff and her husband did not sign the HUD-1 form on September 17, 1997 or at any time before the closing date as the form represents. That the fraud at issue is directed at concealment of the timing of the signing rather than at any specific disclosures on the "Good Faith Estimate" is immaterial as to liability. The **timing** of the relevant disclosures is as critical as their accuracy since the purpose of the RESPA disclosures is to give prospective borrowers an opportunity to evaluate the wisdom of their decision to obtain credit **in advance of becoming contractually obligated.** If borrowers are only provided this information contemporaneously with the closing documents, the lender can insert oppressive charges at the last minute before the borrower has an opportunity to change his mind. Since TILA is a consumer protection statute designed to ensure "a meaningful disclosure of credit terms" to

6

applicants for credit in order to alleviate the unequal bargaining power and sophistication between consumers and lenders, a lender's non-compliance with the timing requirements of the disclosure rules should be dealt with no differently than if the lender had failed to disclose the true costs of the loan altogether. 15 U.S.C. § 1601(a). A timing violation, as alleged in this instance, can be as "apparent on its face" as an actual misrepresentation of a particular charge.

Furthermore, Plaintiff does make out a *prima facie* case for relief against PSB as well as Summit Mortgage pursuant to her third claim for relief under the TILA on the grounds that Summit Mortgage made inaccurate and/or incomplete disclosures pursuant to Regulation Z of the Act and that, by virtue of 15 U.S.C. § 1641(a), PSB succeeded to all the rights and liabilities of the assignor when it voluntarily accepted the assignment of this loan from Summit Mortgage Corporation. First, Plaintiff's alleged failure to receive a "Good Faith Estimate" prior to closing was in direct violation of the RESPA. The "Good Faith Estimate" includes settlement charges which directly affect the amount being financed by the loan. Since inaccurate disclosures of settlement charges can affect the amount financed, which, in turn, may affect the finance charge, the failure of Summit Mortgage to provide Plaintiff with the mandated HUD-1 form prior to closing, coupled with subsequent concealing of this fact by backdating the form constitutes fraud by active concealment of Summit Mortgage's non-compliance with RESPA in addition to the non-compliance. A lender's non-compliance with RESPA by failing

to provide the borrower a "Good Faith Estimate" is tantamount to a failure to disclose the amount financed, and, to the extent a failure to disclose the amount financed does not provide complete information about the finance charge, a TILA violation has occurred. **Brodo v. Bankers Trust Co.**, 847 F.Supp. 353, 359 (E.D.PA 1994) ($10.00 overcharge in the amount financed, standing alone, constituted material TILA violation, entitling plaintiff to rescind the loan).

Secondly, PSB may have agreed to be contractually liable for any claims the trustor could have asserted against the original assignor-beneficiary. Paragraph 12 of the Deed of Trust between Summit Mortgage Corporation and Plaintiffs states that "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17." Although the "covenants and agreements" referred to in the Security Instrument probably do not hold an assignee liable for statutory violations involving the loan application process, it is conceivable that discovery might uncover a servicing agreement between PSB and Summit Mortgage requiring the former to indemnify the latter for any pre-existing liability.

Finally, 15 U.S.C. § 1641(b) provides that "written acknowledgement of receipt by a person to whom a statement is required to be given" pursuant to the TILA is all that is required to trigger assignee liability. Plaintiff in this instance has sufficiently alleged that she received loan documents and acknowledged receipt of them with her signature.

In addition, 15 U.S.C. § 1641(c) provides that "[A]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." Therefore, the remedy of rescission is still available to Plaintiff to redress Defendant's alleged TILA violations. Id. at 356.

## II.
## PLAINTIFF'S FIRST AND THIRD CLAIMS FOR RELIEF ALLEGING FRAUD AND INTENTIONAL MISREPRESENTATIONS IS PLEAD WITH SUFFICIENT PARTICULARITY TO SATISFY FRBP 7009

F.R.Bankr.P. 7009 incorporates by reference F.R.Civ.P. 9, which provides that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." F.R.Civ.P. 9. Plaintiff's first and third counts allege that PSB, through its assignor Summit Mortgage Corporation, intentionally misrepresented to Plaintiff that it had complied with Regulation Z of the TILA and Regulation X of RESPA, that Plaintiff qualified for a second home loan, and that Plaintiff justifiably relied on these misrepresentations, which induced her to accept the loan offer and execute a second trust deed against her home. Defendants PSB and Summit Mortgage knew that Plaintiff and her husband were elderly, that Plaintiff's husband would not likely survive the 20 year term of the loan, and that Plaintiff would find herself unable to repay the second trust deed and note upon her husband's death. Summit Mortgage and PSB also mislead

9

Plaintiff by failing to disclose the actual costs of the loan in a "Good Faith Estimate" before she executed a deed of trust and promissory note and by not requiring Plaintiff to have life insurance on her husband to cover the loan repayment in the event of his death. Despite their actual or likely knowledge of these facts, Defendant PSB and Summit Mortgage represented to Plaintiff that she was qualified for this loan. Had Plaintiff been informed of the true facts, ie. she would be unable to repay this loan in the event of the death of her husband, whom Summit Mortgage and PSB knew or likely knew was in poor health at the time the loan offer was tendered, she would not have executed the loan documents. The facts upon which the allegations for fraud against PSB and Summit Mortgage rest are adequately set forth in the Plaintiff's verified complaint and do more than just put PSB on notice of the claim.

### III.

**IN HER SECOND CLAIM FOR RELIEF PLAINTIFF DOES MAKE OUT A PRIMA FACIE CASE THAT DEFENDANT OWED HER A COMMON LAW DUTY OF ORDINARY CARE AS ASSIGNEE OF HER LOAN AND THAT PSB'S BREACH OF THIS DUTY TRIGGERED DEFENDANT'S LIABILITY FOR NEGLIGENT MISREPRESENTATION OF FACT**

Although, in California, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. **Nymark vs. Heart Fed. Savings & Loan Assn.** (1991) 231 Cal.App. 3d

1089, 1096. However, there are exceptions to the general rule. The test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." **Biakanja vs. Irving** (1958) 49 Cal.2d 647.

    Based upon the allegations set forth in the Plaintiff's verified complaint, there are plausible grounds for imputing a duty of care to Defendant as assignee of rights and liabilities under the note and deed of trust executed between Plaintiff and Summit Mortgage Corporation. First, PSB and Summit Mortgage intended to affect the Plaintiff by inducing her to consummate its loan transaction. Based upon its representations and disclosures to Plaintiff that she had the financial ability to tender all payments pursuant to the promissory note, Plaintiff executed the loan documents. Secondly, it should have been reasonably foreseeable to PSB and Summit Mortgage that Plaintiff could be harmed by relying on its misrepresentations that she could afford this loan. Third, Plaintiff has suffered a cognizable injury as a natural and probable consequence of PSB's and Summit Mortgage's misrepresentations because she has since gone into default under the terms of the loan and has had to file

11

a Chapter 13 bankruptcy in order to protect her only residence from foreclosure. That Plaintiff has suffered harm as a proximate result of PSB's and Summit Mortgage's negligent misrepresentations concerning her qualifications for this loan is irrefutable. Fourth, the closeness of the connection between the Defendant's conduct and the injury suffered, though somewhat tenuous due to the lack of privity between the Plaintiff and Defendant, is buttressed by the agreement between Plaintiff and Summit Mortgage under the deed of trust and the corporate assignment deed of trust executed between Summit Mortgage Corporation and the Defendant. By way of assignment, Defendant succeeded to all the rights and liabilities that formerly belonged to Summit Mortgage. Fifth, the moral blame attached to Summit Mortgage's conduct is particularly egregious inasmuch as Plaintiff did not solicit Defendant for this loan and the fact that Plaintiff and her husband were elderly and that Plaintiff's husband was in very poor health. Plaintiff was clearly the victim of Summit Mortgage's predatory lending practices targeting vulnerable and unsophisticated elderly homeowners. In particular, had Plaintiff been actually aware of the settlement charges **in advance** of signing the deed of trust and promissory note, (including prepaid finance charges of $3,585.00), she would not have been induced into signing the loan documents. Sixth, the policy of preventing future harm is fairly compelling in this case. There is a strong public interest in deterring financial abuses against the elderly, who are particularly susceptible to deceptive trade practices.

1    WHEREFORE, PLAINTIFF prays for an Order granting the
2 following relief:
3    1.  That PSB's Motion to Dismiss Third Amended Complaint
4 Without Leave to Amend Be **DENIED**; or, in the alternative,
5    2.  That Plaintiff be granted further leave to amend her
6 complaint; and
7    3.  For any other relief that this Court deems just and
8 reasonable.

DATED: 05/21/01

Respectfully submitted,

_____
STEVEN R. HOUBECK
Attorney for PLAINTIFF
SIEGLINDE M. ZIMMER

13

## PROOF OF SERVICE

I, the undersigned whose business address appears below, certify:

That I am, and at all times hereinafter mentioned was, more than 18 years of age:

That I am not a party in this Court action:

That on the __21ST__ day of _____MAY_____, 200_1_, I served a true copy of the within:

OPPOSITION TO PSB LENDING CORPORATION'S MOTION TO DISMISS THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.

by messenger service to:



and by deposit in the United States Mail, first class postage prepaid, and addressed to the following:

    Michael M. Wintringer, Esq.
    Solomon, Grindle, Silverman & Spinella
    A Professional Corporation
    12555 High Bluff Drive, Ste. 260
    San Diego, CA 92130

    Summit Mortgage Corporation
    %David Ault, Esq.
    Agent for Service of Process
    18010 Sky Park Circle, Suite 200
    Irvine, CA 92614

    David L. Skelton
    Chapter 13 Trustee
    1111 6th Ave., Ste. 413
    San Diego, CA 92101-5215

I certify under penalty of perjury that the foregoing is true and correct.

Executed on __05/21/01__

_____
Nathan Shilberg

864 No. Second St. PMB 309
El Cajon, California 92021